**Larry HOWARD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 5, 1969.

Joe P. Tackett, Paul E. Hayes, Prestonsburg, for appellant.

John B. Breckinridge, Atty. Gen., James H. Barr, Asst. Atty. Gen., Frankfort, for appellee.

WADDILL, Commissioner.

Appellant, Larry Howard, was indicted on three counts of involuntary manslaughter (KRS 435.022(1)) arising out of an automobile accident. Upon trial he was convicted on each count of second degree involuntary manslaughter (KRS 435.022(2)) and was sentenced to twelve months in jail and fined $1,000.00 on each count.

For reversal of the conviction he contends that the trial court erred: (1) In overruling his motion for a directed verdict; (2) in allowing the Commonwealth's attorney to interrogate him on his failure to request an alcohol blood content test, and (3) in allowing the Commonwealth to introduce his written statement that he was the driver of the automobile that had collided with the Wright automobile.

At about 9:00 P.M. on June 27, 1968, appellant was driving north on U.S. High-way 23 accompanied by John Wilburn. At a straightaway point in the highway located approximately three miles north of Prestonsburg, appellant's automobile collided with an approaching automobile driven by Peggy Wright. As a result of the collision Peggy Wright was injured and the three passengers in her car, her mother and two sisters, were killed. Appellant and his passenger were slightly injured. Several persons, including two highway patrolmen, testified that appellant was intoxicated and there was convincing evidence that he had driven across the center line onto the wrong side of the highway. Peggy Wright testified that, immediately prior to the accident, appellant's car was approaching in her lane of traffic and that she attempted to steer to the left side of the road to avert the collision, but did so too late.

Appellant testified that he had taken only one drink of whiskey approximately four hours prior to the accident. He stated that the Wright automobile slid across the center line and that he tried to avoid the collision by steering his automobile to the left side of the road. He also stated that his passenger had grabbed the steering wheel immediately prior to the collision and had tried to turn the vehicle to the right side of the road and this also contributed to the collision.

We summarily dispose of the first ground urged for reversal by pointing out that the evidence introduced in behalf of the Commonwealth was amply sufficient to take the case to the jury and to support the verdict and judgment. Hodge v. Commonwealth, Ky., 287 S.W.2d 426.

It is next contended that the trial court erred in permitting the Commonwealth's attorney to question appellant concerning whether he was given an alcohol blood content test. However, we observe from the record that it was appellant's counsel who first brought to the jury's attention the fact that appellant had not undergone such a test.

On direct examination appellant's counsel asked appellant the following questions:

"Q–86 Did he [Trooper Ison] say anything about you taking a blood test for alcoholic content?

"By Mr. Stumbo: (Counsel for plaintiff) Objection, Judge, unless he demanded it.

"By the Court: Sustain the objection.

"Q–87 Well, did you take an alcoholic test?

"A. No, sir.

"Q–88 Did anybody offer you any?

"A. No, sir.

"By Mr. Stumbo: (Of counsel for plaintiff)

Objection.

"By the Court:

Overruled."

Apparently the purpose of the foregoing questioning was to try to raise a doubt with the jury concerning the extent of appellant's intoxication at the time he reached the hospital. In an attempt to clarify the confusion brought about by the direct examination as to what had occurred with regard to a blood test, the following cross-examination was made:

"Q–191 Now, while you were out there at that hospital did you ask them to give you a blood test?

"A. No, I didn't know there was any reason.

"Q–192 Well, you knew you had been drinking whiskey, didn't you?

"A. At around five o'clock that evening.

"Q–193 And you knew that you had run into an automobile down there and killed three people didn't you?

"A. I didn't know anybody was killed at the time.

"Q–194 And you knew there would be a question about whether you was drunk or not, didn't you?

"A. Yes, but I don't think everybody that has an accident asks for a blood test.

"Q–195 Yes, but you thought that might come up, didn't you?

"A. No, sir.

"Q–196 You didn't think about that?

"A. No, sir.

"Q–197 And never thought about asking them to give you a blood test?

"A. I didn't see no reason to.

"Q–198 If you weren't drunk it would have been a fine thing, wouldn't it?

"A. It would have been a fine thing and if I had knowed this was coming up I would have asked.

"Q–199 Did you have any reason to suspect that this might come up since you were in the custody of a State Policeman and three people had been killed and you were the driver of the automobile?

"By Mr. Tackett: Note our objections. It is not encumbent (sic) upon a defendant to ask for a blood test.

"By the Court: Overruled. You opened the door to this on direct.

"Q–200 Didn't you think that you might be charged with something if all of that had happened and a policeman had you by the arm?

"A. The policeman didn't have me by the arm. He just said that he was taking me to the hospital to have me checked."

The testimony indicates that appellant was taken to the hospital, not for a blood test, but for treatment of the injuries he

sustained in the accident. However, a state trooper attempted to have a blood test conducted upon appellant before he was lodged in jail but was unsuccessful because the doctors who would conduct the test were too busy attending to persons who were injured. Assuming that the testimony in question concerned an irrelevant matter and was incompetent, there are at least two reasons why we will not review this alleged error; first, because appellant's counsel opened the door on direct examination for this character of testimony to be introduced, and second, the objections that appellant made to the Commonwealth's questions were after most of the questions had been answered and were therefore not timely made. There was no motion made to strike the testimony.

 Immediately after the accident no one knew whether appellant or the other occupant of the automobile was driving at the time of the collision. Hence, appellant was interrogated on three separate occasions about it and on each occasion he was specifically advised of his constitutional rights as set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. At the first interrogation appellant signed a statement that John Wilburn, his companion, was driving the automobile at the time of the accident At the second interrogation, after being advised of the seriousness of the matter, he admitted that he was driving the automobile and signed a written statement to that effect. At the third interrogation appellant stated that he could not afford an attorney and one was assigned to him at that time. The trial court, after conducting a hearing in chambers pursuant to our directions in Bradley v. Commonwealth of Kentucky, Ky., 439 S.W.2d 61, held that the written statement that appellant signed that he was driving the car involved in the accident was freely given and was not coerced and was therefore competent evidence against him.

It is now insisted that this ruling of the court constitutes prejudicial error. Without stating the arguments made by the parties to this appeal concerning whether or not appellant's signed statement was admissible, it will suffice to say that appellant took the stand in his own behalf and stated on direct examination that he was the driver of the car that had collided with the Wright car. He then attempted to justify the manner in which his car was driven. In these circumstances there is no reasonable basis for the allegation of error with regard to his signed statement. See Pickens v. State, (Okl.Cr., 1969) 450 P.2d 837; Chandler v. State, (1968) 283 Ala. 29, 214 So.2d 306; Gladden v. Frazier, (9 Cir., 1968) 388 F.2d 777, and Cook v. State, (Tex.Cr.App., 1966) 409 S.W.2d 857.

After considering all of the issues raised by appellant, we are convinced that he received a fair trial.

The judgment is affirmed.

All concur.